Green, Judge,
delivered the opinion of the court:
This action is begun pursuant to a joint resolution of Congress approved March 4, 1933, reading as follows:
Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction is hereby conferred upon the Court of Claims of the United States, notwithstanding the lapse of time or any statute of limitations, to hear the claim of P. F. Gormley Company for payment at the contract price of $106 per ton for structural steel furnished and used in the performance of its contract numbered 2304 with the Navy Department, dated March 10, 1917, for construction of structural shop building at the navy yard, Philadelphia, Pennsylvania, for such amount as will equitably compensate said company for said steel not in excess of the price aforesaid; and also claims for damages or extra costs occasioned by orders of the Navy Department requiring the contractor to pay wages at rates fixed by war-time wage boards; by the commandeering of contractor’s labor for use on war-time work considered more urgent; for increased costs due to extended period of performance necessitated by wartime conditions and war orders, with the right on the pan of the Government to present any legal and equitable set-offs and defenses and to render findings of fact, and upon such findings of fact to render judgment, but without any allowance for interest on the determined amount for damages prior to its rendition.
It appears that plaintiff entered into a contract for the construction of a building and that the contract provided that plaintiff should be paid $106 per ton for the structural steel erected and used therein. After the contract had been signed by plaintiff and by the Acting Secretary of the Navy, it was altered by one of the defendant’s officials and when the contract was completed the plaintiff was paid only in accordance with the alteration which fixed the price at $98 per ton for the structural steel, and not in accordance with the contract as originally executed.
The defense set up is that the alteration was made before delivery of the contract and that defendant’s officials had a right to change the same. It is also alleged that plaintiff consented to the alteration.
*532 The findings show that on March 2,1917, the Chief of the Burean of Yards and Docks, Navy Department, accepted a bid of plaintiff for the construction and completion of a structural shop building at the Navy Yard at Philadelphia,, at various unit prices, the one here material being $106 per ton for structural steel. Plaintiff made this bid on structural steel for the reason that he had an understanding with one J. B. Bonner, who was vice chairman of the Subcommittee on Steel Distribution of the American Iron & Steel Institute and a representative of the Carnegie Steel Company, and who solicited the order for erecting the structural steel, that the cost to plaintiff of this material would be $90 a ton erected and in place. Bonner urged plaintiff to place an order for the structural steel with the American Bridge Company at $106 and if that was done promised that he, Bonner, would see that plaintiff was reimbursed the difference of $16 a ton. This arrangement plaintiff agreed to. It does not appear that Bonner was legally authorized to make such an agreement. The Carnegie Steel Company and the American Bridge Company were subsidiaries of the United States Steel Corporation. The United States Steel Corporation was a holding company, the Carnegie Steel Company a rolling mill, and the American Bridge Company a fabricating and erecting concern. Pursuant to this arrangement the American Bridge Company on January 27, 1917, proposed to the plaintiff in writing to furnish and erect the structural steel in question for $106 per net ton.
On March 10, 1917, plaintiff signed a form of contract which had been forwarded to him by the Bureau of Yards and Docks in which the price of $106 per ton for structural steel was fixed in conformity with the accepted bid, and the contract together with the bond required was delivered to the Bureau of Yards and Docks.
The Bureau of Yards and Docks the same day forwarded the contract to the Secretary’s office for signature and it was signed by the Acting Secretary of the Navy, March 13,1917, with bond approved and returned the same day to the Bureau of Yards and Docks.
*533 Work under the contract was commenced by the plaintiff March 10, 1917, and from that time on, with the knowledge of defendant, was prosecuted continuously except for necessary delays.
About April 6, 1917, the president of the United States Steel Corporation agreed with, the Secretary of the Navy after some negotiations to furnish steel for Navy construction at certain maximum prices, and April 11, 1917, the American Bridge Company notified the plaintiff that in accordance with an agreement with the Navy Department they quoted a revised price of $98 per ton for the structural steel entering into the building to be constructed by him. The plaintiff immediately thereafter conferred with the Chief of the Bureau of Yards and Docks, Admiral Harris, and protested against any reduction in his contract price. Plaintiff was told by Harris that if the change was not agreeable to him he [Harris] would take the contract from him and readvertise it and tried to prevail on plaintiff to give up the job, but plaintiff said he wanted it and nothing-definite was agreed upon. On April 14, 1917, Harris wrote the plaintiff a letter among other things stating that the contract would be modified so as to pay for the structural steel at the rate of $98 per ton instead of the price bid by him. The letter was not received by plaintiff and he did not reply thereto.
On April 23,1917, Harris wrote again to the plaintiff with reference to the contract, stating among other things, that “it is proposed to change the provisions of this contract * * * the compensation to be paid for structural steel will be changed from $106 per ton to $98 per ton.” This letter was not received by the plaintiff and the plaintiff did not at any time express a consent to the proposed changes or request or obtain from the surety its consent to the changes. The surety company, however, did forward to the Bureau of Yards and Docks a written consent to the changes and thereafter an officer in the Bureau of Yards and Docks, without authority to contract for the Government, changed or caused to be changed the contract by erasing the words “one hundred and six dollars” and writing in their stead *534 “ninety-eight dollars” so that Item 14 read: “Item 14, for .structural steel, ninety-eight dollars ($106.00) per ton.” After these changes had been made a copy of the contract ■was on May 4, 1917, delivered to the plaintiff showing the ■changes. The original date of the contract, March 10, 1917, was not changed.
On May 9, 1917, the Bureau of Yards and Docks sent a letter to plaintiff and a copy thereof each to J. B. Bonner, to the Navy Yard at Philadelphia, and to the Bureau of ■Supplies & Accounts, Navy Department, in which plaintiff was requested to place his orders for structural steel required by the contract direct with the American Bridge Company. Later, a contract was entered into between the American Bridge Company and the plaintiff for the structural steel required at the price of $98 per ton. It was dated March 12, 1917.
It is argued on behalf of defendant that it had the right to change the contract any time before delivery and in support of this contention Ligon v. Wharton, 120 S. W. (Tex.) 930, 933, and Page on Contracts are cited. This may be the general rule, especially in relation to deeds, but there are many exceptions. In the case before us the plaintiff’s bid was accepted with the understanding that a written contract would be prepared by the defendant and delivered to plaintiff to be signed. The plaintiff signed the contract and returned it to be signed on behalf of the defendant which was done. The contract recited that it was “made and concluded this tenth day of March, A. D. 1917.” This expression is somewhat stronger than the words “made and executed” which were held in Elbring v. Mullen, 4 Ida. 199, to import a delivery. In Weaver v. Simmon, 15 Tex. Civ. Ap. 154 (38 S. W. 1140) it is held that a delivery is not necessary when the parties have entered into mutual engagements with the understanding that they are to be immediately effective and have caused such engagements to be reduced to writing and •signed as evidence thereof. The evidence as a whole shows a similar case here. The Federal statute requires every contract made by the Secretary of the Navy “to be reduced to writing, and signed by the contracting parties with their names at the end thereof.” This provision is strictly en *535 forced and we think that when it has been complied with the contract has been executed in accordance with law. The statute also requires a copy of the contract to be filed with the Department of the Interior but this provision does not affect the validity thereof. At the time the contract was executed the National Defense Act of June 3, 1916, was in force and under this statute orders for war material took precedence over all other orders and contracts. The Naval Appropriation Act of March 4, 1911, contained a similar provision. Plaintiff also about April 3, 1917, contracted with the American Bridge Company for the structural steel required at the price of $106 per ton and from March 10,. 1917, to April 4, 1917, entered into other subcontracts for labor and material to be performed under the prime contract,, under which payments were eventually made by the plaintiff in the aggregate sum of $97,242.64. Immediately on the-signing of the contract by the Secretary of the Navy, the plaintiff commenced work in accordance therewith and prosecuted it continuously to completion. Defendant was notified, of the commencement of the work.
In Sarasohn v. Kamaiky, 193 N. Y. 203, it was said that' any evidence that shows that the parties to a written instrument intended the same should be operative and binding-upon them is sufficient in an action to enforce its provisions.
The action of the plaintiff in commencing the work as soon: as the contract was signed and the prosecution thereof with, defendant’s knowledge, the efforts of defendant’s officials to-get plaintiff to agree to a change in the contract and all the-circumstances of the case, we think show that it was intended, and understood that the contract was in full force and effect when signed by both parties and was immediately to go into - effect.
The contract was changed by defendant sometime between-. April 23 and May 3,1917. Under the circumstances detailed above, we think the defendant had no right to make the-change unless it was assented to by the plaintiff. The defendant contends that the plaintiff did make such an agreement in a conference with Admiral Harris about April 11,. 1917, but we think it is shown by the letters which Harris; subsequently wrote that nothing definite was agreed upon. *536 at the time of this conference. The plaintiff denies receiving the letters which Harris wrote shortly after the conference. We think it is immaterial whether or not he received them, for he made no answer to them and we have found that he did not agree to the change. In this connection it will be noted that the first of these letters stated that the contract “will be modified so as to provide for payment for structural steel entering into the same at the rate of $98 per ton;” and a second letter stated “it is proposed to change the provisions of this contract,” as stated, in the first letter. (See Finding 9.) He was also requested in these letters to inform the Bureau of his “approval of these proposed changes” and to obtain in writing the consent of his surety thereto. While the surety did agree to the change, the evidence fails to show that this consent was solicited by plaintiff.
The defendant contends that the testimony of the plaintiff as to his conversation with Bonner, who at the time of the trial was deceased, is not competent. The testimony as to what Bonner told plaintiff, if admissible at all, is as part of the res gestae in the way of explanation of why plaintiff was willing in the first instance to agree to pay $106 per ton for the structural steel when it could be bought for much less. But in view of the fact that plaintiff subsequently made a second agreement with the American Bridge Company to pay only $98 per ton, we do not think this is material, and in any event it is not necessary to plaintiff’s case. •
The plaintiff furnished and erected 3,957.346 net tons of structural steel for which he was paid at the rate of $98 per ton, receiving $31,658.77 less than would have been paid Mm in accordance with the terms of the contract as originally signed. The alteration in the contract being unauthorized, the plaintiff is entitled to recover the sum last named above, and judgment will be rendered accordingly.
Whaley, Judge; Williams, Judge; Littleton, Judge; and .Booth, Chief Justice, concur.